The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 12, 2018

**2018COA94**

**Nos. 2014CA2506 and 2014CA2511 — Criminal Law — Competency to Proceed; Courts and Court Procedure — Court of Appeals — Jurisdiction**

In this direct appeal of a criminal conviction and a revocation of probation, in which the defendant was found legally incompetent after the notice of appeal was filed, a division of the court of appeals considers (1) defendant's request for an indefinite stay of the direct appeal due to incompetence; (2) defendant's request for a limited remand to restore competence; and (3) counsel's request to stay a ruling on the defendant's motions to terminate counsel's representation and to dismiss the appeal. As a matter of first impression, the division denies the defendant's request for an indefinite stay and holds that the direct appeal may proceed as long as the defendant is permitted to raise any issues not raised by

appellate counsel, due to the defendant's incompetence, in a postconviction proceeding.  Under well-settled Colorado and federal law, the division grants the requests to stay a ruling on the motions to terminate counsel and to dismiss the appeal because an incompetent defendant can do neither.  Finally, the division holds, as a matter of first impression, that it may order restoration to competence on limited remand under section 13-4-102(3), C.R.S. 2017, because restoration to competence is necessary for the division to resolve the motions to dismiss counsel and to dismiss the appeal.  Accordingly, the motion is granted in part and denied in part.

COLORADO COURT OF APPEALS                    **2018COA94**

Court of Appeals No. 14CA2506
Arapahoe County District Court No. 12CR2253
Honorable Michelle A. Amico, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ari Misha Liggett,

Defendant-Appellant.

----------------------AND----------------------

Court of Appeals No. 14CA2511
Arapahoe County District Court No. 10CR576
Honorable Michelle A. Amico, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ari Misha Liggett,

Defendant-Appellant.

ORDER GRANTING MOTION IN PART AND DENYING IN PART,
AND REMANDING CASE WITH DIRECTIONS

Division A
Order by JUDGE FREYRE
Taubman and Ashby, JJ., concur

Announced July 12, 2018

Cynthia H. Coffman, Attorney General, Matthew S. Holman, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Eric A. Samler, Alternate Defense Counsel, Hollis A. Whitson, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1 In this direct appeal of two cases — first degree murder after deliberation and revocation of probation (based on the murder conviction) — counsel for the defendant, Ari Misha Liggett, request an indefinite stay of the appellate proceedings due to Liggett's incompetence. For the same reason, counsel ask us to stay ruling on Liggett's request to terminate counsel's representation and to dismiss the appeal. Finally, counsel ask us to remand the cases to the district court for competency restoration proceedings.

¶ 2 Liggett's counsel and the People agree, as do we, that an incompetent defendant cannot waive the right to counsel or a direct appeal. Therefore, we cannot rule on these requests until Liggett is restored to competence during the period in which we have jurisdiction over the appeal, as discussed in Part IV.

¶ 3 The remaining two requests present issues no Colorado appellate court has considered. First, should a defendant's direct criminal appeal be stayed indefinitely when such person is found legally incompetent after the notice of appeal is filed? For the reasons explained below, we answer that question "no." We hold that a defendant's direct criminal appeal should proceed, despite a

1

finding of incompetence. Therefore, we deny Liggett's counsel's request to indefinitely stay the appellate proceedings.

¶ 4 Second, does this court have the authority to bifurcate the direct appeal and to grant a limited remand for competence restoration proceedings while the appeal proceeds? We answer that question "yes." We hold that section 13-4-102(3), C.R.S. 2017, authorizes this court to "issue any writs, directives, orders, and mandates necessary to the determination of cases within [our] jurisdiction." Because, due to Liggett's incompetence, we are unable to rule on the pending requests to dismiss counsel and to dismiss the appeal, we conclude that a limited remand for restoration proceedings under section 16-8.5-111(2), C.R.S. 2017, is necessary for our future determination of these motions and the dispositions of the direct appeals. Therefore, we grant in part Liggett's counsel's request for a remand to restore Liggett to legal competence.

## I. Background

¶ 5 A jury convicted Liggett of first degree murder after deliberation on November 10, 2014. The court sentenced him to life in prison without the possibility of parole on November 14, 2014.

2

At the same time, the court found that Liggett's murder conviction constituted a violation of his probation and sentenced him to a three-year concurrent prison sentence for the violation. It awarded him 1095 days of presentence confinement credit on the three-year sentence.[1]

¶ 6　　Following the imposition of sentence, trial counsel asked the court to appoint the public defender's office for the purpose of appealing both cases. Liggett did not object. Thus, when Liggett was competent, the public defender filed a timely notice of appeal on December 29, 2014. Both cases were eventually assigned to current counsel acting as alternate defense counsel.

¶ 7　　On September 19, 2016, appellate counsel filed a motion to dismiss the appeal in the murder case. By an order, this court denied that motion with leave to renew it upon receiving an affidavit from Liggett averring that he had been advised of his rights concerning the appeals and that he wished to dismiss them.

¶ 8　　On October 24, 2016, appellate counsel filed a motion to stay the proceedings in both cases and requested a limited remand to

---

[1] Although that sentence has been fully served, the probation appeal is not moot because a reversal of the murder conviction would require reversal of the probation revocation finding.

determine whether Liggett was competent to proceed and competent to knowingly, voluntarily, and intelligently waive his rights to appeal and to counsel. Counsel represented that Liggett wished to terminate counsel's representation, and to dismiss the appeals. Counsel asserted a good faith belief that Liggett (1) lacked the capacity to make an informed choice; (2) lacked an understanding of his choices; (3) lacked an understanding of counsel's role in the appellate proceedings; and (4) was overcome by a serious thought disorder. Because of these issues, counsel maintained they could not ethically procure an affidavit from Liggett waiving his rights to appeal and to counsel, absent a competency determination.

¶ 9 By a one-judge order, this court granted the motion for limited remand on December 13, 2016. After receiving two evaluations declaring Liggett incompetent to proceed, the district court entered an order on September 26, 2017, finding Liggett incompetent to proceed and incompetent to make a knowing, voluntary, and intelligent wavier of his rights to counsel and to appeal. Based on the language of the remand order, the district court ruled that it did not have jurisdiction to initiate restoration proceedings.

¶ 10    After the recertification of both cases on appeal, counsel filed a motion to stay the appellate proceedings indefinitely and for a limited remand to restore Liggett to competence.  The People objected, arguing, based on out-of-state jurisprudence and on William H. Erickson et al., *Mental Health Standards* 7-5.4 (Am. Bar Ass'n 1984), that the appeal could proceed.  Thereafter, we requested supplemental briefing on the novel issues described above.

## II.    Waiver of Counsel and Appeal

¶ 11    It is well settled that the right to counsel is a constitutional right and that a defendant may waive that right only if (1) the defendant is competent to waive the right, and (2) the defendant makes the waiver knowingly, voluntarily, and intelligently.  U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Godinez v. Moran*, 509 U.S. 389, 400-01 (1993); *People v. Davis*, 2015 CO 36M, ¶ 15. A defendant is competent to waive this right when he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding[] and . . . has a rational as well as factual understanding of the proceedings against him."  *Davis*, ¶ 16 (quoting *Dusky v. United States*, 362 U.S. 402 (1960)).  Moreover, a

5

defendant must be competent to abandon his appeals. *Rees v. Payton*, 384 U.S. 312 (1966); *see People v. Bergerud*, 223 P.3d 686, 693-94 (Colo. 2010) (noting that decision whether to take an appeal is so fundamental to a defense that it cannot be made by defense counsel, but rather must be made by the defendant himself).

¶ 12 Because Liggett's counsel and the People agree that Liggett is incompetent, and because they agree that an incompetent defendant cannot waive the right to counsel or to a direct appeal, we conclude, consistent with the district court's finding, that Liggett is currently incompetent to waive counsel and to dismiss the appeal. Therefore, we cannot rule on the requests to dismiss counsel and to dismiss the appeal unless and until Liggett is restored to competence during the appellate process.

### III. The Direct Appeal May Proceed Despite the Incompetence Finding

¶ 13 Liggett's counsel contend that the direct appeal should be stayed indefinitely because proceeding while Liggett is incompetent will violate his Sixth Amendment right to counsel and his Fifth and Fourteenth Amendment rights to due process of law. Counsel rely on well-established federal jurisprudence holding that an

6

incompetent defendant may not be prosecuted unless he possesses both a sufficient present ability to consult with counsel and a rational and factual understanding of the nature of the proceedings. *See Dusky*, 362 U.S. at 402; *see also Drope v. Missouri*, 420 U.S. 162, 171-72 (1975); *Pate v. Robinson*, 383 U.S. 375, 385 (1966). Appellate defense counsel further contend that a meaningful attorney-client relationship cannot exist if a defendant is incompetent, so counsel is unable to fulfill the ethical obligations of representation. Finally, counsel contend that proceeding with the appeal to completion will trigger state and federal periods for filing postconviction motions, and, thus, Liggett's incompetence may work a forfeiture of important postconviction rights.

¶ 14 Relying on numerous out-of-state cases that have addressed this issue, the People argue that the direct appeal should proceed because appellate proceedings do not require a defendant's participation in the same way that trial proceedings do. They further argue that any failure of appellate counsel to raise meritorious issues due to incompetence can be remedied through postconviction relief. We find the People's argument persuasive and

therefore deny Liggett's motion to indefinitely stay the direct appeals.

### A. Standard of Review and Relevant Law

¶ 15     It is well settled that the conviction of a person who is mentally incompetent violates the basic concepts of due process under the Fourteenth Amendment to the United States Constitution and article II, section 16 of the Colorado Constitution. Moreover, federal and state due process guarantees mandate fair procedures on appeals as of right, including the appointment of counsel for indigent defendants and the effective assistance of counsel. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Douglas v. California*, 372 U.S. 353, 357-58 (1963); *Adargo v. People*, 159 Colo. 321, 324, 411 P.2d 245, 247 (1966); *Petition of Griffin*, 152 Colo. 347, 349-50, 382 P.2d 202, 204 (1963). Colorado provides a statutory direct appeal as of right to all persons convicted of a felony. § 16-12-101, C.R.S. 2017; *see* C.A.R. 4(b)(1), (c); *People v. Wiedemer*, 852 P.2d 424, 438 (Colo. 1993). This right includes the right to counsel and the right to the effective assistance of appellate counsel. *See People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989).

¶ 16    The General Assembly has prescribed the procedures for district courts to follow when a defendant's competence is raised during the trial proceedings.  *See* §§ 16-8.5-102 to -116, C.R.S. 2017.  However, no such procedures exist for defendants who become incompetent after a notice of appeal is filed.  Thus, we examine how other courts faced with this issue have resolved this procedural conundrum, together with Colorado's competency statutes, to the extent they are applicable.

¶ 17    Whether an incompetent defendant's appeal should be stayed or should proceed is a question of law that we review de novo.  *See In re J.C.T.*, 176 P.3d 726, 729 (Colo. 2007).  Moreover, we interpret statutes de novo.  *Bostelman v. People*, 162 P.3d 686, 689 (Colo. 2007).  In construing statutes, we look first to their plain language and give words their common and ordinary meanings.  *Id.* at 690.  We presume the General Assembly understands the legal import of the words it uses and intends that each word be given meaning.  *Dep't of Transp. v. Stapleton*, 97 P.3d 938, 943 (Colo. 2004).

B.    Analysis

¶ 18    A majority of courts faced with deciding whether an incompetent defendant's appeal should be stayed or should proceed

9

have adopted the procedure set forth in the Mental Health Standards prepared by the American Bar Association (ABA). These courts have held that an incompetent defendant's direct appeal should not be stayed, despite incompetence, as long as the defendant is provided a postconviction remedy to raise issues not raised on appeal due to the defendant's incompetence. *See Buxton v. State*, 352 P.3d 436, 438 (Alaska Ct. App. 2015) (holding that an incompetent defendant's appeal may proceed provided that postconviction relief is later available, at which time he can show that he was prejudiced by the appeal proceeding); *People v. Kelly*, 822 P.2d 385 (Cal. Ct. App. 1992) (same); *Dugar v. Whitley*, 615 So. 2d 1334, 1335 (La. 1993) (same); *Fisher v. State*, 845 P.2d 1272, 1276-77 (Okla. Crim. App. 1992) (holding that an incompetent defendant's appeal may proceed if he is later provided a postconviction remedy for raising issues due to incompetence); *Reid v. State*, 197 S.W.3d 694, 705-06 (Tenn. 2006) (holding that in postconviction proceedings, which include direct appeal, legal claims and factual claims not requiring a defendant's input should not be stayed based on incompetence); *State v. Debra A.E.*, 523 N.W.2d 727, 735-36 (Wis. 1994) (applying procedure from ABA

standards to postconviction and direct appeal proceedings). *But see Commonwealth v. Silo*, 364 A.2d 893, 895 (Pa. 1976) (holding that it would be improper to permit an incompetent defendant's appeal to proceed if the defendant was unable to assist counsel in its preparation).

¶ 19　These courts reason that a stay would be harmful by causing a defendant to suffer from delayed reversals of meritorious claims, and further, that proceeding with the appellate process advances the state's interest in the expeditious administration of the criminal justice system. *See Buxton*, 352 P.3d at 438; *Reid*, 197 S.W.3d at 705-06. They further reason that the same considerations that prohibit an incompetent person from being tried do not apply once judgment has been entered. For instance, issues on appeal are limited to the appellate record, and attorneys do not need to rely on a defendant's recollection of the trial proceedings to decide which issues are worthy of pursuit. *See Kelly*, 822 P.2d at 407-08. In permitting an appeal to proceed, however, these courts agree that due process requires that a defendant be able to raise issues not raised on appeal due to the defendant's incompetence in a later postconviction setting when and if the defendant has been restored

11

to competence. *See Debra A.E.*, 523 N.W.2d at 735 ("Assessing competency during [appellate] proceedings creates a record of a defendant's mental capacity, thus eliminating the difficulty of attempting to measure that capacity months or years after the period in question.").

¶ 20 ABA mental health standard 7-5.4, titled "[m]ental incompetence at time of noncapital appeal," provides as follows:

> (a) A defendant is incompetent at the time of appeal in a noncapital case if the defendant does not have sufficient present ability to consult with [the] defendant's lawyer with a reasonable degree of rational understanding, or if the defendant does not have a rational as well as factual understanding appropriate to the nature of the proceedings.
>
> (b) Mental incompetence of the defendant at the time of appeal from conviction in a criminal case should not prohibit the continuation of such appeal as to matters deemed by counsel or by the court to be appropriate.
>
> (i) If, following the conviction of the defendant in a criminal case, there should arise a good faith doubt about the mental competence of the defendant during the time of appeal, counsel for the state or the defendant should make such doubt known to the court and include it in the record.

(ii) Counsel for the defendant should proceed to prosecute the appeal on behalf of the defendant despite the defendant's incompetence and should raise on such appeal all issues deemed by counsel to be appropriate.

(c) Mental incompetence of the defendant during the time of appeal shall be considered adequate cause, upon a showing of prejudice, to permit the defendant to raise, in a later appeal or action for postconviction relief, any matter not raised on the initial appeal because of the defendant's incompetence.

¶ 21    Comments to the standard explain that it is based on three assumptions. First, criminal defendants' interests are best served by proceeding with the appeal because a timely resolution of the appeal might overturn their convictions or modify their sentences. *Mental Health Standards* 7-5.4 cmt. Second, although criminal defendants must decide whether to appeal a conviction, they otherwise rely on appellate counsel's strategic and tactical decisions about which claims to raise and how those claims should be argued. *Id.* Finally, a defendant's incompetence "rarely affects the fairness or accuracy of appellate decisions" because defendants generally do not actively participate in the appellate proceedings. *Id.* at cmt. intro.

13

¶ 22    On August 8, 2016, the ABA replaced these standards with

new ones.  *See Criminal Justice Standards on Mental Health* (Am.

Bar Ass'n 2016), https://perma.cc/82UC-QZXH.  The new standard

applicable here is Standard 7-8.8, titled "[c]ompetence to proceed:

appealing from conviction in a noncapital case."  It provides as

follows:

> (a) Consistent with Standard 7-5.2, the test for
>     determining whether the defendant is
>     competent to make a decision regarding
>     whether to appeal [a] conviction in a
>     noncapital case should be whether the
>     defendant has sufficient present ability to
>     consult with counsel with a reasonable
>     degree of rational understanding and
>     whether the defendant has a rational as well
>     as factual understanding of the nature and
>     consequences of the decision.
>
> (i)    If the defense attorney believes the
>        defendant is competent under this
>        Standard, then the defense attorney
>        should abide by the defendant's decision
>        about whether to appeal.
>
> (ii)   If the defense attorney believes the
>        defendant is incompetent under this
>        Standard then the attorney may petition
>        the court to permit a next friend acting
>        on the defendant's behalf to initiate or
>        pursue the appeal.
>
> (b) The decision about which issues to raise on
>     appeal is the defense attorney's.  However,

incompetence of the defendant during the time of appeal should be considered adequate cause, upon a showing of prejudice, to permit the defendant to raise, in a later appeal or action for postconviction relief, any matter not raised on the initial appeal because of the defendant's incompetence.

¶ 23 Further, Standard 7-5.2, titled "[c]ompetence to proceed with specific decisions: control and direction of case," identifies matters solely under the defendant's sphere of control. These matters include the decisions to plead guilty; to assert a defense of non-responsibility; and to waive the rights to a jury trial, to testify, and to appeal. Standard 7-5.2(a).

¶ 24 While Standard 7-8.8 omits specific language directing appellate counsel to prosecute the appeal despite the defendant's incompetence, we construe that standard as assuming the ongoing prosecution of the appeal by (1) specifically identifying matters within a defendant's sphere of control in Standard 7-5.2, which notably excludes appellate issues; (2) specifying that defense counsel decides which issues to raise on appeal; and (3) providing an incompetent defendant with a remedy for challenging issues not

15

raised due to incompetence in a later appeal or postconviction

proceeding.[2]

## C.    Application

¶ 25    We are persuaded by the reasoning of the ABA standards and the cases applying them and conclude that they set forth a practical procedure that both promotes the effective administration of the judicial system and provides meaningful postconviction relief to defendants when and if competence is restored.

¶ 26    First, there are significant differences between the trial and appellate stages of a criminal proceeding.  Criminal proceedings are initiated by the state.  The purpose of a trial, from the state's perspective, is to  prove beyond a reasonable doubt that a presumptively innocent person is guilty of a crime.  Requiring competence at this stage preserves the presumption of innocence by ensuring that a criminal defendant can assist defense counsel in defending the case.  Competence also ensures that a defendant is

---

[2] The revised standards also provide a procedure for initiating the appellate process where a defendant becomes incompetent in the period between the imposition of sentence and the filing of the notice of appeal, an issue not presented here.  *Criminal Justice Standards on Mental Health* 7-8.8 (Am. Bar Ass'n 2016), https://perma.cc/82UC-QZXH.

16

able to make significant constitutional choices that require the advice of counsel, like whether to plead guilty, to testify, or to pursue self-representation. *See McCoy v. Louisiana*, 584 U.S. ___, ___, 138 S. Ct. 1500, 1508 (2018) (describing decisions reserved for the defendant as including whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, assert innocence at trial, and forgo an appeal). Such assistance is crucial as the defendant often possesses the only information that may cast doubt on the state's case. Further, a defendant's ability to communicate with and assist defense counsel preserves the defendant's constitutional rights to be present and to confront accusers.

¶ 27 In contrast, appellate proceedings are generally initiated by a defendant who seeks to overturn a finding of guilt. A convicted defendant no longer enjoys the presumption of innocence and the attendant rights of confrontation and to be present at the proceeding. Indeed, a convicted defendant's choices are primarily whether to pursue a direct appeal and whether to be represented by counsel. Moreover, unlike the right to a jury trial, which is guaranteed by the Federal and State Constitutions, there is no corresponding constitutional right to an appeal. *See Ross v. Moffitt,*

417 U.S. 600, 610-11 (1974). And, because appellate counsel's ability to raise issues is limited to the appellate record, communication with and input from a defendant are not necessary for counsel to effectively brief issues on appeal. *See Kelly*, 822 P.2d at 414 ("'[C]onvicted defendants, like parties to appellate litigation in general, do not participate in appeal proceedings.'" (quoting *ABA Criminal Justice Mental Health Standards* 7-5.4(c) cmt. intro. (1989))). Because of these significant differences between a defendant's involvement in the trial and appellate processes, we are not convinced that the cases which preclude the *prosecution* of an incompetent defendant, on which Liggett's counsel rely, necessarily preclude the direct appeal of a defendant's conviction when incompetence arises during the appellate process.

¶ 28    We find support in the existing competency statutes and in particular, section 16-8.5-102(1), C.R.S. 2017, which governs the procedures for raising pretrial incompetency. This provision provides as follows:

> While a defendant is incompetent to proceed, the defendant shall not be tried or sentenced, nor shall the court consider or decide pretrial matters that are not susceptible of fair determination without the personal

> participation of the defendant. However, a determination that a defendant is incompetent to proceed *shall not preclude the furtherance of the proceedings by the court to consider and decide matters*, including a preliminary hearing and motions, *that are susceptible of fair determination prior to trial and without the personal participation of the defendant.*

*Id.* (emphases added). Thus, the General Assembly has recognized that even before a conviction is entered, incompetence implicates a defendant's decisions and choices, but does not require the complete cessation of all proceedings. Indeed, those pretrial proceedings in which the personal participation of the defendant is not required and that are susceptible of fair determination without the defendant's participation may proceed.

¶ 29    Similarly, Colorado law holds that appellate counsel — not the defendant — primarily decides, as a matter of strategy, which issues should be raised on appeal. *See Downey v. People*, 25 P.3d 1200, 1206 (Colo. 2001); *People v. Ray*, 2015 COA 92, ¶ 13; *People v. Trujillo,* 169 P.3d 235, 238 (Colo. App. 2007).

¶ 30    We acknowledge that a defendant's incompetence might prevent counsel from acquiring information or learning of concerns important to the proper disposition of an appeal. Consequently, we

hold that Liggett must be permitted to raise in a postconviction

motion any matter not raised in the direct appeal due to his

incompetence. When and if he is restored to competence,[3] the

postconviction limitations set forth in Crim. P. 35(c), including, but

not limited to, the time limits of subsection (3)(I), the claim limits of

subsection (3)(VI), the claim limits of subsection (3)(VII), and the

claim limits of subsection (3)(VIII), should not apply to him.[4]

¶ 31    Accordingly, we deny Liggett's counsel's request to indefinitely

stay the direct appeal in each case, and we direct the parties to

proceed with briefing in accordance with a separate briefing order

---

[3] Because of this holding, we do not further address timing issues related to state postconviction proceedings or offer any opinion on whether a defendant must be competent to pursue postconviction relief under Crim. P. 35(c). Additionally, we reject Liggett's counsel's argument that proceeding with the appeal would necessarily cause a forfeiture of Liggett's federal habeas corpus rights. *See Holland v. Florida*, 560 U.S. 631 (2010) (holding that the one-year statute of limitations on petitions for federal habeas relief by state prisoners is subject to equitable tolling); *Ata v. Scott*, 662 F.3d 736, 742 (6th Cir. 2011) (holding that a petitioner's incompetence can constitute an extraordinary circumstance that tolls the limitations period if the petitioner established mental incompetence and that such incompetence caused the failure to comply with the statute of limitations).

[4] A defendant claiming ineffective assistance of appellate counsel during the period of incompetency retains the burden of proving both deficient performance and prejudice in order to receive postconviction relief. *People v. Valdez*, 789 P.2d 406, 409-10 (Colo. 1990).

issued today. The briefing schedule will be sent under a separate order of this court.

## IV. Bifurcated Proceedings

¶ 32    Having concluded that the direct appeal can proceed, we must decide how to resolve the pending motions before us in light of Liggett's incompetence. The People contend that the direct appeal divested the district court of jurisdiction and that the appeal and restoration proceedings cannot occur simultaneously. They also argue that the district court has no authority to order the Department of Corrections (DOC), in whose custody Liggett resides, to restore him to competency.

¶ 33    Liggett's counsel do not separately address bifurcation, but request a stay of all proceedings, which we have already rejected, and a remand for restoration to competence.

¶ 34    This court's subject matter jurisdiction is a question of law that we review de novo. *People v. Sandoval*, 2016 COA 57, ¶ 14. We agree with the People that, generally, the filing of a notice of appeal divests the district court of jurisdiction to issue further orders that relate to the order or judgment on appeal. *People v. Hampton*, 696 P.2d 765, 771-72 (Colo. 1985); *see also* § 13-4-

21

102(1)(2); C.A.R. 1.  We further agree that the existing competency statutes, article 8.5 of title 16, govern a defendant's competency to participate in criminal proceedings in the district court before a conviction enters and do not apply to direct appeals.

¶ 35     Nevertheless, section 13-4-102(3) provides that "[t]he court of appeals shall have authority to issue any writs, directives, orders, and mandates *necessary to the determination of cases within its jurisdiction.*" (Emphasis added.)  *See also People v. Bergen*, 883 P.2d 532, 542 (Colo. App. 1994) (recognizing that the court of appeals does not possess general powers of supervision over lower courts except as provided in section 13-5-102(3)).  No one questions our jurisdiction to consider Liggett's appeals — the only question is whether we possess the legal authority to order restoration while the appeal is pending.  The answer to that question depends on whether restoration is necessary to the determination of Liggett's cases.  Because his incompetence precludes us from ruling on his pending requests to terminate counsel and to dismiss the appeal, we conclude that a limited remand to restore Liggett's competence

22

is necessary to our determination of these requests and, thus, to these cases.[5]

¶ 36    We find support for our position in the numerous instances recognized by statute, case law, and rule in which this court retains concurrent jurisdiction with the district court during a direct appeal. *See, e.g.*, § 13-20-901(1), C.R.S. 2017 (district court proceedings not stayed when the court of appeals exercises its discretion to consider an interlocutory appeal of an order granting or denying class certification); § 18-1.3-202, C.R.S. 2017 (district court retains jurisdiction to modify terms of and revoke probation during appeal); § 19-3-205, C.R.S. 2017 (district court retains jurisdiction over any child adjudicated neglected or dependent until the age of twenty-one including when adjudication order is on appeal); *Sanoff v. People*, 187 P.3d 576 (Colo. 2008) (district court retains jurisdiction to rule on restitution after notice of appeal is filed); *People in Interest of Dveirin*, 755 P.2d 1207, 1209 (Colo. 1988) (district court retains jurisdiction over all subsequent certification

---

[5] We may rule on the pending requests if Liggett's competence is restored before we lose jurisdiction over the appeal. If Liggett remains incompetent, restoration for those matters within the appellate court's jurisdiction will be rendered moot when the mandate issues.

23

proceedings when the validity of short-term certification is pending appeal); *In re Parental Responsibilities Concerning W.C.*, 2018 COA 63 (district court retains jurisdiction to consider motions to modify parenting time and decision-making while permanent orders are on appeal); *People in Interest of E.M.*, 2016 COA 38M (district court retains jurisdiction to enter and modify treatment plans while adjudicatory order is on appeal), *aff'd sub nom. People in Interest of L.M.*, 2018 CO 34; *In re Estate of Scott*, 119 P.3d 511 (Colo. App. 2004) (probate court retains jurisdiction to conduct administration of the estate after its judgment regarding all pending claims and parties is final), *aff'd sub nom. Scott v. Scott*, 136 P.3d 892 (Colo. 2006); *People v. Stewart*, 26 P.3d 17 (Colo. App. 2000) (district court retains jurisdiction to rule on motions for stay and for appeal bonds during appeal), *aff'd in part and rev'd in part*, 55 P.3d 107 (Colo. 2002); *Koontz v. Rosener*, 787 P.2d 192, 198 (Colo. App. 1989) (district court retains jurisdiction to consider attorney fees as costs after notice of appeal is filed); *see also* C.R.C.P. 54(b) (district court retains jurisdiction over remaining claims while certified claims are appealed); C.R.C.P. 59 (district court retains jurisdiction to rule on a pending Rule 59 motion after notice of appeal is filed).

¶ 37 Moreover, we are not persuaded that Liggett's confinement in the custody of the DOC necessarily precludes restoration proceedings from occurring. The plain language of section 16-8.5-111(2)(b) provides that the district court may commit a defendant to the Department of Human Services for restoration and gives the executive director of the Department authority over the restoration proceedings. Nothing in the statutory language requires a defendant to reside in a particular location for restoration to occur. And we note that Liggett was confined in the custody of the DOC when the district court ordered the Department to perform the competency examinations pursuant to our limited remand. We have no reason to expect that such cooperation between the Department and the DOC will not or cannot occur with respect to restoration proceedings.

¶ 38 Nevertheless, we leave to the district court's discretion the resolution of any issues that may arise between the Department and the DOC. Accordingly, we remand the case to the district court for the limited purpose of ordering proceedings to restore Liggett to competence. This order will remain in effect until Liggett is restored to competence or until the mandate issues, whichever occurs first.

25

V.    Conclusion

¶ 39    We grant a stay of the ruling on Liggett's requests to terminate counsel and to dismiss the appeal.  We deny the request to indefinitely stay the appellate proceedings and order the direct appeal to proceed in accordance with the scheduling order.  We grant the request for a limited remand to seek to restore Liggett to competence and remand the case to the district court for that limited purpose.  If competence is restored before the mandate issues, then Liggett shall immediately forward a copy of the district court's order to this court.  Entry of the order on the matter shall be construed as recertification of the appeal by the district court.  The order entered shall be made a part of the record on appeal.

¶ 40    If Liggett wishes to amend the notice of appeal with any issue arising on remand, a motion to amend shall be filed within fourteen days of notice of recertification of the appeal by this division and shall be accompanied by a motion to supplement the record, if necessary.

¶ 41    We further order Liggett's counsel to notify this division in writing of the status of the district court proceedings in the event that this matter is not concluded within sixty-three days from the

26

date of this order.  Liggett's counsel shall file status reports every sixty-three days until recertification or until further order of this division.

JUDGE TAUBMAN and JUDGE ASHBY concur.